## [No. 3658.]

### LUKE SULLIVAN v. THE STATE.

CHARGE OF THE COURT.— POSSESSION OF RECENTLY STOLEN PROPERTY, even when unexplained, is but circumstantial evidence of guilt in a theft case, and, the State relying solely upon that fact, the defendant is entitled to a charge upon the law of circumstantial evidence.

APPEAL from the County Court of Johnson. Tried below before the Hon. J. M. Hall.

The conviction in this case was for the burglary of the house of one William Johnson, in Johnson county, Texas, on the 26th day of April, 1885. A term of two years in the penitentiary was the penalty assessed.

William Johnson, the first witness for the State, testified that he lived with his father on his farm in Johnson county, Texas. On Sunday, April 25, 1885, the entire household went to church, leaving the defendant at home, in charge of the house. When they got home, about 5 o'clock on that evening, they found that the defendant had gone, taking his valise with him. The door leading into the room occupied by the witness and his wife was found open. Search disclosed that a pocket-book containing a five-dollar gold piece, a one-dollar gold piece and a gold ring, which had been left in a small box on the table, was gone. The box was not locked or fastened. Witness, when he left, did not know that the pocket-book was in the little box. The articles in the pocket-book belonged to the witness's wife. Witness also missed a breastpin that he owned. That breastpin was in a large trunk in the family room. The trunk was not locked. Witness went at once in search of the defendant and found him at Alvarado, boarding the Missouri Pacific Railroad. Witness took him off the cars and turned him over to an

officer, who searched him and found upon his person the articles which the witness had missed. Defendant cursed a good deal when arrested, but said nothing about the offense charged against him.

Cross-examined, the witness said that the defendant was a farm hand in the employ of his father. He lived in the house with the family and was treated as one of the family. He performed any little chores about the house, such as making fires, etc., when called upon. The witness had never authorized, nor had he ever forbidden, the defendant to go into his sleeping room. Witness and his wife had exclusive control of the room. The defendant usually went anywhere about the house that he wanted to go.

Mrs. William Johnson was the next witness for the State. She testified that she was the wife of the witness who had just left the stand. The articles in the pocket-book described by the witness Johnson belonged to her. The pocket-book which contained the articles described was left, on the Sunday mentioned in the indictment, sitting on a small table in the bed-room of the witness and her husband. The box was not fastened. This room was occupied by the witness and her husband as their private sleeping-room, and no one else owned the articles stored in that room. Nor had any person, other than witness and her husband, authority over the room. If witness had ever seen the defendant in that room she would unquestionably have ordered him out, as he had no business in that room. When the witness and the other members of the household left the house to go to church, she carefully closed the windows of that room, and the door as well. That door fastened on the inside by a button which would fall into place when the door was closed suddenly. It fastened on the outside by a string and nail.

Cross-examined, the witness stated that the door, when secured on the inside, was opened from the outside by passing the finger through a small hole and turning the button. The defendant lived in that house with the family, and was treated as a member of the family. He went about the house just as he pleased without objection by any one.

Mrs. J. B. Johnson, the mother of William and the mother-in-law of Mrs. William Johnson, was the next witness for the State. She testified that she noticed her daughter-in-law close her room door before she and the others of the family went to church. The defendant was left at home alone when the parties went to church.

Cross-examined, the witness testified that the defendant was employed by her husband as a farm hand. He lived in the house like

a member of the family, and performed any small service about the house when called upon. Witness, on starting to church, directed him to close all the doors of the house, if he left before they returned from church.

J. B. Johnson, the father of William Johnson, testified, for the defense, that he employed the defendant to work on his place in January, 1885. Defendant lived in the house like a member of the family, and went about it as he pleased without objection. William Johnson and his wife had exclusive control of the room they occupied as a bed-room. If the defendant had ever been forbidden to go into any particular room in the house, witness did not know it.

H. P. Holcomb testified, for the defense, that he had known the defendant for the last few months. His general reputation for honesty was good.

The motion for new trial raised the question passed upon in the opinion.

No brief for appellant has reached the Reporters.

*J. H. Burts,* Assistant Attorney-General, for the State.

WILLSON, JUDGE. The learned trial judge, and likewise the assistant attorney-general, appear to entertain the view that evidence which proves that the defendant was found in possession of property recently stolen, and of which possession he gives no reasonable explanation, is positive and direct evidence that he committed the theft of such property, and that in such case a charge upon the rules governing circumstantial evidence is not required. We have always understood, and still understand, such evidence to be purely circumstantial when regarded as evidence to prove the guilt of the defendant. Such is the character of evidence in this case, and the court failed to instruct the jury in the rules governing in such cases; for which error the judgment is reversed and the cause remanded.

*Reversed and remanded.*